UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICARDO CASTRO,<br><br>                       Plaintiff,<br>v.<br><br>UNITED SECURITY INC.,<br><br>                       Defendant. | 10 Civ. 6152 (LBS)<br><br>**MEMORANDUM &**<br>**ORDER** |

SAND, J.

Before the Court is *pro se* Plaintiff's Ricardo Castro's motion for reconsideration of this Court's October 17, 2011 Order granting Defendant United Security Inc. ("United Security")'s motion to dismiss. For the reasons discussed below, the motion for reconsideration is granted. Upon reconsideration, we nevertheless reaffirm on other grounds the conclusion we reached in the October 17, 2011 Order, dismissing the case.

**I.    Background**

Castro was employed by United Security as the security site supervisor at a building in downtown Manhattan owned by the company LimeWire until his termination on November 5, 2009. Second Amended Compl. at 5. He filed a charge of employment discrimination with the EEOC twelve days later, on November 17, 2009. Pl.'s Obj. Mot. Dismiss at 1. On April 4, 2010, the Equal Employment Opportunity Commission ("EEOC") sent Castro a Dismissal and Notice of Rights (colloquially known as a "right-to-sue letter"), granting him the right to pursue his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as other federal anti-discrimination statutes, in federal court. Kaiser Decl., Ex. A.

On July 9, 2010, Castro filed a complaint with this Court's *Pro Se* Office. Mot. Recons. Ex. A. In the Complaint, Castro accused United Security of discriminating against him in the

1

terms and conditions of employment, firing him on account of his race or national origin, and engaging in retaliatory discrimination in violation of Title VII. Compl. at 2-3. After reviewing Castro's complaint, the *Pro Se* Office placed it on the Court docket on August 17, 2010. On October 15, 2010, Castro filed an Amended Complaint ("AC"). On January 31, 2011 he filed a Second Amended Complaint ("SAC"), in which he corrected several dates misstated in the AC and added two causes of action under New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.*

United Security moved to dismiss the SAC as untimely and as insufficiently pled. On October 17, 2011 we granted Defendant's motion to dismiss because we found that Castro's initial complaint was untimely under 42 U.S.C. § 2000e-5(f)(1), which grants Title VII plaintiffs only 90 days after receipt of their right-to-sue letter from the EEOC in which to file a complaint in federal court. *Castro v. United Security*, No. 10 Civ. 6152, 2011 U.S. Dist. LEXIS 119347, at *7-8 (S.D.N.Y. Oct. 17, 2011). On November 28, 2011, Castro moved for reconsideration of the October 17, 2011 Order. He argued that although the complaint was docketed more than 90 days after he received the right-to-sue letter from the EEOC, he filed it with the *Pro Se* Office within the 90-day window granted Title VII plaintiffs under U.S.C. § 2000e-5(f)(1). Mot. Recons. at 1.

## II. Discussion

### a. The Motion to Reconsider

"Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (internal quotation marks omitted). "The major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Castro argues that reconsideration is merited in this case because the Court committed a clear error in its October 17, 2011 Order when it calculated the timeliness of the complaint under 42 U.S.C. § 2000e-5(f)(1) according to the date on which it was docketed—namely, August 17, 2010—rather than the date it was filed— July 9, 2010. We agree. The text of 42 U.S.C. § 2000e-5(f)(1) makes clear that the timeliness of the complaint is calculated with reference to when the plaintiffs brings the complaint, not when the complaint is ultimately docketed and assigned a case number. 42 U.S.C. § 2000e-5(f)(1) (within ninety days of the receipt of a right-to-sue-letter from the EEOC "a civil action may be *brought* against the respondent named in the charge") (italics added). Our use of the August 17 rather than the July 9 date when calculating timeliness was therefore clear error, and the kind of clear error that can reasonably be expected to alter the conclusion reached by the court.

The motion to reconsider is therefore granted. Upon reconsideration, we conclude that the complaint was in fact timely. As we noted in the previous Order, Castro's time to file suit expired no earlier than July 11, 2010. *Castro*, 2011 U.S. Dist. LEXIS 119347, at *4. Castro filed suit within this period. We accordingly deny Defendant's motion to dismiss the complaint as untimely and turn, for the first time, to the other arguments in favor of dismissal that United Security raised in its May 9, 2011 motion.

### b. The Motion to Dismiss

#### i. The Standard of Review

In deciding a motion to dismiss a complaint pursuant to Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2nd Cir. 2007) (internal citations omitted). While detailed factual allegations are not required, a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

While *pro se* plaintiffs remain bound by these standards, courts are required to construe their complaints liberally, to "raise the strongest arguments that they suggest." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) and "to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of their rights because of lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

#### ii. The Title VII Claims

Castro alleges in the SAC that United Security subjected him to disparate treatment on account of his race and national origin. He also claims that he was fired because he complained about his mistreatment, in violation of 42 U.S.C. §2000e-3(a).

To prevail on a Title VII disparate treatment claim, a plaintiff must ultimately prove that "(1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination

based on his membership in the protected class." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005). At the pleadings stage, however, Title VII plaintiffs are required only to plead sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). United Security argues that Castro's disparate treatment claim fails to satisfy even this loose pleading requirement because it provides no evidence or allegations to suggest that Castro was fired under circumstances giving rise to an inference of discrimination. We agree.

In the SAC, Castro alleges that he was forced to endure harsh working conditions, and ultimately was fired, because he complained about the "unsanitary and hazardous (physically) conditions at the Limewire site." SAC, at 5. He provides evidence to support this allegation. He notes for example that the Limewire representative at the construction site, Tom Lipinski, barred him from leaving the site for lunch and required Castro to inform him whenever he wished to use the restroom only after Castro began complaining, on a weekly basis, about the unsanitary and hazardous conditions to which he and his subordinates were subjected at the Limewire site. SAC, at 5. Castro also alleges that when he asked Lipinski why he was being fired from the Limewire job, Lipinski told him it was "because of all [his] bitching and complaining about the conditions." *Id.* Nowhere in the SAC does Castro allege that he was also fired, or subjected to harsh working conditions, because of his race or national origin. He merely notes that his replacement at the Limewire site was a white man with less experience and that his superior at United Security, Bill Coburg, treated this man better than he treated similarly situated black and Hispanic employees. *Id.* at 6.

Even under the generous pleading standard afforded *pro se* plaintiffs who bring Title VII claims in this Circuit, this is insufficient to state a claim of disparate treatment. Unlike other

5

complaints which the Second Circuit has concluded sufficient to state a claim to relief under Title VII despite relatively slim factual allegations, Castro does not assert that he suffered an adverse employment decision, such as a termination, because of his membership in a protected class. *See, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (finding a Title VII complaint sufficient because it stated that the plaintiff "is an African American female"... and alleges that she "was treated differently from similarly situated loan applicants . . . because of her race, sex, and the location of the property in a predominantly African-American neighborhood"). Although he notes that his supervisor, Bill Coburg, complained more when minority employees were late or sick than the similarly situated white individual, he does not allege that any of these employees suffered any penalties as a result.

Although Castro provides good evidence in the SAC of discriminatory treatment, he thus does not provide any evidence of discrimination on the basis of his race or national origin. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (holding that the "*sina qua non* of the discriminatory action claim under Title VII" is a claim that the discrimination was motivated *by* the employee's protected characteristic). Accordingly, Castro's disparate treatment claim must be dismissed.

We reach the same conclusion with respect to Castro's retaliatory termination claim. 42 U.S.C. §2000e-3 makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice" prohibited by Title VII by, for example, complaining to a supervisor or filing suit. 42 U.S.C. §2000e-3. "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an

employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 112.

Although the SAC alleges that Castro was retaliated against because of complaints he made to his supervisors at the Limewire site, it does not allege that these complaints concerned actions prohibited by Title VII. Instead, they concerned the working conditions at the Limewire site—working conditions to which both minority and non-minority employees were subject. The SAC provides therefore no evidence to suggest that it was Castro's participation in a "protected activity," as the term is defined in the Title VII context, that led to his termination. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567-568 (2d Cir. 2011) (defining protected activity as an activity intended "to secure or advance enforcement of Title VII's basic guarantees") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006)); *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) ("The objective of [the anti-retaliation provision] is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice [as defined in Title VII]."). Accordingly, we dismiss Castro's claim of discriminatory retaliation.

### iii. The State Law Claims

For the reasons laid out in our October 17, 2011 Order, we decline to exercise supplemental jurisdiction over Castro's state law claims and dismiss them without prejudice, pursuant to 28 U.S.C. § 1367(c). *See Castro*, 2011 U.S. Dist. LEXIS 119347, at *7-8. Castro is as a result free to litigate these claims in state court, provided that within ten days of filing suit in state court he serves a copy of the complaint upon the City Commission of Human Rights and

the Corporation Counsel, as mandated by the New York City Human Rights Law. N.Y. City Admin. Code § 8-502.

### III. Conclusion

Plaintiff's motion to reconsider is granted. Upon reconsideration, however, we affirm the conclusion reached in the October 17, 2011 Order, dismissing Plaintiff's Title VII claims with prejudice and dismissing Plaintiff's state law claims without prejudice, for lack of jurisdiction.

SO ORDERED.

Dated: February 21 2012
New York, N.Y.

_____
U.S.D.J.